IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
_____

| | |
|---|---|
| ATTORNEY GENERAL EX. REL THE PEOPLE OF THE STATE OF MICHIGAN; THE DEPARTMENT OF ENVIRONMENT, GREAT LAKES, AND ENERGY; AND THE DEPARTMENT OF NATURAL RESOURCES, | Case No. 2:20-cv-00520  Hon. Paul L. Maloney |
| Plaintiffs, | |
| v. | |
| LEE MUELLER; BOYCE MICHIGAN, LLC; EDENVILLE HYDRO PROPERTY, LLC; BOYCE HYDRO POWER, LLC; BOYCE HYDRO, LLC; WD BOYCE TRUST 2350; WD BOYCE TRUST 3649; WD BOYCE TRUST 3650; STEPHEN B. HULTBERG; AND MICHELE G. MUELLER, | |
| Defendants. | |

---

Nathan A. Gambill (P75506)
Michigan Department of Attorney General
Attorney for Plaintiffs
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664

The Kogan Law Group, P.C.
Lawrence A. Kogan (NY # 2172955)
Attorneys for Defendants
100 United Nations Plaza, Suite #14F
New York, NY 10017
(212) 644-9240
lkogan@koganlawgroup.com

Aaron M. Phelps (P64790)
VARNUM, LLP
Attorneys for Defendants
P.O. Box 352
Grand Rapids, MI  49501-0352
(616) 336-6000
amphelps@varnumlaw.com

---

## ANSWER TO COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

NOW COME Defendants Lee Mueller; Boyce Michigan, LLC; Edenville Hydro Property, LLC; Boyce Hydro Power LLC; Boyce Hydro, LLC; WD Boyce Trust 2350; WD Boyce Trust 3649; WD Boyce Trust 3650; Stephen B. Hultberg; and Michele G. Mueller, by and through their undersigned counsel, and for their answer to Plaintiffs' Complaint, state as follows:

### COMPLAINT

1.      This lawsuit seeks to vindicate the rights of the public to enjoy and benefit from Michigan's natural resources, including the freshwater mussels that live in the Wixom Lake ecosystem in Gladwin and Midland Counties. Without authorization, Defendants dramatically lowered the level of Wixom Lake for an extended period in both 2018 and 2019 (Drawdowns), causing the death of thousands if not millions of freshwater mussels—many of which are federally endangered. The Drawdowns also unreasonably dewatered wetlands that depend on Wixom Lake and otherwise damaged Michigan's natural resources. This suit seeks monetary relief and civil fines to compensate the public for the damage caused to the public's natural resources, and equitable and prospective relief to restore the natural resource damage and to ensure that it does not happen again.

**ANSWER:   It is admitted only that the State of Michigan has brought a civil action for the claims made seeking the identified relief.   It is denied that the State of Michigan is entitled to any relief or that its claims have any legal or factual merit.**

### PARTIES, VENUE, AND JURISDICTION

2.      Michigan's Attorney General is the people's attorney and also files suit on behalf of the State's agencies. See MCL 14.28; MCL 14.29. The Attorney General is authorized to file suit to enjoin the violation of statutes and otherwise seek to end public

nuisances and protect the State's natural resources. See Attorney Gen ex rel Michigan Bd of Optometry v Peterson, 381 Mich 445, 466 (1969); MCL 324.1701 et seq.

**ANSWER:    It is admitted only that the State of Michigan has brought a civil action under the identified statutes.  It is denied that the State of Michigan is entitled to any relief or that its claims have any legal or factual merit.**

3.     The Michigan Department of Environment, Great Lakes, and Energy (EGLE) is the agency tasked with enforcing Part 301 and Part 303 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.30101 et seq. and MCL 324.30301 et seq.

**ANSWER:    This allegation constitutes a legal conclusion to which no response is required.**

4.     The Michigan Department of Natural Resources (DNR) is the agency that manages the fish and wildlife in Michigan, which by law belong to the public. MCL 324.40105; MCL 324.48702(1).

**ANSWER:    This allegation constitutes a legal conclusion to which no response is required.**

5.     Edenville Hydro Property, LLC owns the dam where the Drawdowns took place.

**ANSWER:    Admitted.**

6.     Boyce Michigan, LLC owns property on which the dam's operation depends.

**ANSWER:    Admitted in part and denied in part.**

7.     Boyce Hydro, LLC operates the dam where the Drawdowns took place.

**ANSWER:    Admitted.**

8.     Boyce Hydro Power, LLC operates and funds the dam where the Drawdowns took place.

**ANSWER:    Denied.**

9.    WD Boyce Trust 2350, is a member of Edenville Hydro Property, LLC; a member of Boyce Michigan, LLC; a member of Boyce Hydro, LLC; and a member of Boyce Hydro Power, LLC.

**ANSWER:    Admitted.**

10.    WD Boyce Trust 3649, is a member of Edenville Hydro Property, LLC; a member of Boyce Michigan, LLC; a member of Boyce Hydro, LLC; and a member of Boyce Hydro Power, LLC.

**ANSWER:    Admitted.**

11.    WD Boyce Trust 3650, is a member of Edenville Hydro Property, LLC; a member of Boyce Michigan, LLC; a member of Boyce Hydro, LLC; and a member of Boyce Hydro Power, LLC.

**ANSWER:    Admitted.**

12.    Lee W. Mueller is sued personally and as member and co-manager of Edenville Hydro Property, LLC; as member and co-manager of Boyce Michigan, LLC; as member, employee, and co-manager of Boyce Hydro, LLC; as member and co-manager of Boyce Hydro Power, LLC; as co-trustee and beneficiary of WD Boyce Trust 2350; as co-trustee and beneficiary of WD Boyce 3649; and as co-trustee and beneficiary of WD Boyce Trust 3650.

**ANSWER:    It is admitted only that the State of Michigan has brought a civil action against the identified parties.  It is denied that the State of Michigan is entitled to any relief or that its claims have any legal or factual merit.  It is denied that lee Mueller is a member or owner of any Michigan LLCs. It is admitted that Lee Mueller has served as the principle manager as an employee, and is the only active co-member of the identified party entities.**

13.    Stephen B. Hultberg is sued personally and as member and co-manager of Edenville Hydro Property, LLC; as member and co-manager of Boyce Michigan, LLC; as member, employee, and co-manager of Boyce Hydro, LLC; as member and co-manager of Boyce Hydro Power, LLC; as co-trustee and beneficiary of WD Boyce Trust 2350; as co-trustee and beneficiary of WD Boyce 3649; and as co-trustee and beneficiary of WD Boyce Trust 3650.

**ANSWER:    It is admitted only that the State of Michigan has brought a civil action against  the identified parties.  It is denied that the State of Michigan is entitled to any relief or that its claims have any legal or factual merit.  It is denied that Stephen B. Hultberg is a member or owner of any Michigan LLCs or that he is an active co-member of the identified party entities.  It is also denied that Stephen B. Hultberg is a manager or employee of and responsible for the operations of the identified party entities.**

14.    Michele G. Mueller is sued personally and as member of Edenville Hydro Property, LLC; as member of Boyce Michigan, LLC; as member and employee of Boyce Hydro, LLC; and as member of Boyce Hydro Power, LLC.

**ANSWER:    It is admitted  only  that the  State  of  Michigan  has  brought  a  civil  action against the identified parties.  It is denied that the State of Michigan is entitled to any relief or that its claims have any legal or factual merit.  It is denied that Michele G. Mueller is a member or owner of any of the identified party entities.**

15.    Venue is appropriate in this Court, and this Court has jurisdiction, because this action is "brought by the attorney general in the name of the state or of the people of the state, for the use and benefit thereof," so it is "as though the cause of action arose in" Ingham County. MCL 14.102; see also MCL 600.16$1.

**ANSWER:    These  allegations  constitute  legal  conclusions  to  which  no  response  is required.**

Additionally, the violation of a statute passed to benefit the public welfare is a public nuisance, and circuit courts have jurisdiction over actions to abate public nuisances. MCL 600.2940(1).

**ANSWER:    This  allegation  constitutes  a  legal  conclusion  to  which  no  response  is required.**

### GENERAL ALLEGATIONS

16.    Michigan's Constitution declares the "conservation and development of the natural resources of the state" to be "of paramount public concern in the interest of the health, safety and general welfare of the people." 1963 Const, art 4, § 52. Accordingly, it orders the Legislature to "provide for the protection of the air, water and other natural resources of the state from pollution, impairment and destruction." *Id*.

**ANSWER:    This  allegation  constitutes  a  legal  conclusion  to  which  no  response  is required.**

17.    To carry out its mandate, the Legislature created the Natural Resources and Environmental Protection Act, MCL 324.101 et seq. Defendants' actions implicate several provisions of that Act, including Part 17 (Environmental Protection Act), Part 301 (Inland Lakes and Streams), Part 303 (Wetlands Protection), Part 355 (Biological Diversity Conservation), Part 365 (Endangered Species Protection), Part 457 (Mussels), and Part 487 (Sport Fishing).

**ANSWER:    This  allegation  constitutes  a  legal  conclusion  to  which  no  response  is required.**

18.    Wixom Lake is an artificial impoundment formed by the Edenville Dam at the confluence of the Tobacco and Tittabawassee Rivers. It is an "inland lake or stream" regulated under Part 301. MCL 324.30101(i). It supports contiguous wetlands regulated under Part 303.

**ANSWER:    To the extent these allegations constitute legal conclusions, no response is required.  Defendants otherwise lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.  Defendant specifically denies the validity of the term "Lake" when referencing the privately owned impoundment that Plaintiff admits is an "artificial impoundment."**

19.    Wixom Lake, its associated wetlands, and the variety of species they support, including freshwater mussels, is an "ecosystem" under Part 355. MCL 5324.35501(d). The Wixom Lake ecosystem contributes to Michigan's "biological diversity," which consists of "the full range of variety and variability within and among living organisms and the natural associations in which they occur." MCL 324.35501(a).

**ANSWER:    To the extent these allegations constitute legal conclusions, no response is required.  Defendants otherwise lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

20.    The Legislature has determined that Michigan's "biological diversity is an important natural resource." MCL 324.35502(a). It is "valuable as a source of intellectual and scientific knowledge, recreation, and aesthetic pleasure." MCL 324.35502(d).

**ANSWER:    To the extent these allegations constitute legal conclusions, no response is required.  Defendants otherwise lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

7

21.     Wixom Lake is home to a diverse freshwater mussel community that includes at least the following 15 species: creeper, ellipse, elktoe, fatmucket, fluted-shell, giant floater, kidney-shell, paper pondshell, plain pocketbook, rainbow, round pigtoe, snuffbox, spike, Wabash pigtoe, and white heelsplitter. Four of the species (fluted-shell, paper pondshell, rainbow, and round pigtoe) are designated by the DNR as being of special concern, which means that their numbers are declining, or they are a species that has survived from a primitive era. Importantly, the snuffbox is on both the state and federally endangered species list, and thus further protected by Michigan law. MCL 324.36505.

**ANSWER:    Defendants lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

22.     Michigan's freshwater mussels belong to the public. MCL 324.48702(1).

**ANSWER:    Defendants lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

23.     Freshwater mussels provide multiple ecosystem services, such as the following: they are a direct food source for other animals, including lake sturgeon, muskrats, raccoons, and otters; they provide habitat for aquatic macroinvertebrates that are in turn food for numerous species of fish; they eat by filtering water, which filtering action increases water clarity and stores away the nutrients that would otherwise cause eutrophication and algal blooms; their shells keep a record of pollution events by sequestering atmospheric carbon and incorporating heavy metals; and because they are sensitive to changes in physical habitat and water quality, they serve a "canary in the coalmine" function for indicating the health of an ecosystem.

**ANSWER:    Defendants lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

24.    The loss of freshwater mussels means the loss of the valuable services they provide both to an ecosystem and to humans.

**ANSWER:   Defendants lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

25.    Freshwater mussels are the most imperiled of any major group of animals, and Michigan populations are overall in decline.

**ANSWER:   Defendants lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

26.    Damaging Michigan's biodiversity may have "potentially serious consequences" by eliminating "the raw materials available for scientific and technical advancement," including materials crucial for "agricultural, medicinal, and industrial development." MCL 324.35502(f), (h).

**ANSWER:   To the extent these allegations constitute legal conclusions, no response is required.  Defendants otherwise lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

27.    Damaging Michigan's biodiversity "may also potentially impact ecosystems and critical ecosystem processes that moderate climate, govern nutrient cycles and soil conservation and production, control pests and diseases, and degrade wastes and pollutants." MCL 324.35502(g).

**ANSWER:   To the extent these allegations constitute legal conclusions, no response is required.  Defendants otherwise lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

28.    According to the State's records, there are regulated wetlands on and contiguous to Wixom Lake, such as the northern portions of both the Tobacco side and Tittabawassee side impoundments, the marsh east of Heron Cove, and others.

**ANSWER:    Defendants lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

29.    The Legislature has determined that wetlands serve many crucial services, including flood and storm control, wildlife habitat, pollution treatment, recharging groundwater supplies, erosion control, and sanctuaries for fish. MCL 324.30302.

**ANSWER:    Defendants lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

30.    The Edenville Dam is owned, controlled, or operated by Defendants.

**ANSWER:    Admitted in part and denied in part.**

31.    From late-September 2018 to the spring of 2019, Defendants opened the gates of the Edenville Dam and lowered Wixom Lake by approximately eight feet.

**ANSWER:    Admitted in part and denied in part.**

32.    In the spring of 2019, Defendants refilled Wixom Lake.

**ANSWER:     Admitted in part and denied in part.**

33.    In December 2019, Defendants again opened the gates of the Edenville Dam and again lowered Wixom Lake by approximately eight feet.

**ANSWER:    Admitted in part and denied in part.**

34.    The Drawdowns were rapid and significant.

**ANSWER:    Denied.**

35.    Neither Drawdown was authorized by EGLE or the DNR.

**ANSWER:    Denied.**

36.    In fact, Defendants applied for a permit to perform the December 2019 Drawdown, and the application was denied. Defendants performed the Drawdown, anyway.

**ANSWER:    Admitted in part and denied in part.**

37.    Once the State learned of the December 2019 Drawdown, it sent notice to Defendants of the violation to give them an opportunity to mitigate the natural resource damages Defendants were causing. Defendants did not mitigate the damages and continued the December 2019 Drawdown.

**ANSWER:    Admitted in part and denied in part.**

38.    To put the significance of the eight-foot drawdowns into perspective, both the Federal Energy Regulatory Commission—the entity that regulated the level of Wixom Lake before the current lake level order was in place—and the current lake level order, only allow the winter level of Wixom Lake to decrease by approximately three feet.

**ANSWER:    This allegation constitutes a legal conclusion to which no response is required.  This allegation is otherwise denied.**

39.    The Drawdowns rapidly exposed large portions of Wixom Lake bottomland and left them exposed for a prolonged period.

**ANSWER:    Denied.**

40.    Freshwater mussels breathe through gills, just as fish, which is why they can only survive on the inundated bottomland of rivers, lakes, streams, and ponds. But unlike fish, freshwater mussels move slowly and unpredictably—they will not necessarily move towards deeper water quickly enough to survive. Even if they burrow deeper into the earth once

bottomland is exposed, the burrowing will not protect them from harm during long periods of dewatering or freezing temperatures—such as the extended period of the Drawdown.

**ANSWER:    Defendants lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

41.    The DNR performed mussel surveys during the Drawdowns on exposed bottomland below the three-foot contour line of Wixom Lake, and found that the Drawdowns caused the death of thousands, if not millions, of freshwater mussels.

**ANSWER:    Defendants lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

42.    Those surveys also showed that snuffbox mussels, a state and federally endangered species, live on Wixom Lake, and the Drawdowns caused the death of snuffbox mussels. Defendants' taking of state and federally endangered mussels violates Michigan law. MCL 324.36505.

**ANSWER:    To the extent these allegations constitute legal conclusions, no response is required.  Defendants otherwise lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

43.    The fact that Defendants significantly drew down the lake in 2018, refilled it in the spring of 2019, and then significantly drew it down again in 2019 was especially destructive to the freshwater mussel community on Wixom Lake. The refill lured mussels that had survived the 2018 Drawdown back to watered areas, only to have those areas dewatered again in 2019.

**ANSWER:    Defendants otherwise lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

12

44.     The Drawdowns also increased the risk of significant erosion to the exposed edges of the lakebed.

**ANSWER:    Defendants otherwise lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

45.     Had Defendants followed the standard permitting process to perform the Drawdowns, they would have been required to demonstrate—among other things—that there were no feasible and prudent alternatives to such dramatic Drawdowns and also been required to mitigate the natural resource impacts of the Drawdowns as much as possible.

**ANSWER:    To the extent these allegations constitute legal conclusions, no response is required.  Defendants otherwise lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

46.     Had Defendants obtained permits from EGLE, they would have been required to take actions to meaningfully mitigate the harm a Drawdown would cause to the freshwater mussel ecosystem at Wixom Lake, such as: limiting the Drawdown rate and timing to minimize the impact on freshwater mussels and other animals; coordinating with the DNR to obtain a permit authorizing the proper handling of mussels; daily monitoring of stranded fish, mussels, and other organisms with an ongoing obligation to safely relocate as many stranded organisms as possible.

**ANSWER:    To the extent these allegations constitute legal conclusions, no response is required.  Defendants otherwise lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

47.     Because Defendants bypassed or ignored the permitting process, they also bypassed the mitigating measures that would have lightened the burden the Drawdowns—if such

significant Drawdowns truly were necessary—would have had on the State's natural resources, including wetlands and the freshwater mussel population.

**ANSWER:    To the extent these allegations constitute legal conclusions, no response is required.  Defendants otherwise lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

48.    Although Defendants apparently made some effort in the initial stages of the December 2019 Drawdown to mitigate harm to mussels, they have declined to provide the documentation necessary to substantiate their efforts, if any.

**ANSWER:    Admitted in part and denied in part.**

49.    Defendants are now responsible to the public for the damage they caused the State's natural resources, along with civil fines.

**ANSWER:    To the extent these allegations constitute legal conclusions, no response is required.  Otherwise, this allegation is denied.**

### COUNT I: PART 17 (ENVIRONMENTAL PROTECTION ACT)

50.    All previous allegations are incorporated here.

**ANSWER:    Defendants incorporate paragraphs 1 through 49 of this Answer by reference.**

51.    The Drawdowns for which Defendants are responsible have impaired or destroyed freshwater mussel ecosystems. This natural resource damage is not hypothetical. As alleged above, the DNR has performed mussel surveys on the bottomland exposed by the Drawdowns and confirmed the significant harm Defendants caused freshwater mussels, including state and federally endangered mussels.

**ANSWER:    Defendants lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

52.    The Drawdowns have unlawfully impaired the regulated wetlands that depend on Wixom Lake, and continue to do so.

**ANSWER:    To the extent these allegations constitute legal conclusions, no response is required.  Defendants otherwise lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

53.    The Drawdowns have and continue to harm the Wixom Lake ecosystem and the natural resources on which it depends, including by increasing the risk of significant erosion to the exposed edges of the lakebed.

**ANSWER:    Defendants lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

54.    The State seeks an order under MCL 324.1704(1) that requires Defendants to repair the damage the Drawdowns have caused the State's natural resources, cease any further destruction of the State's natural resources, and that forbids any future Drawdown without first obtaining the necessary permits.

**ANSWER:    It is admitted only that the State of Michigan has brought a civil action under the identified statutes.  It is denied that the State of Michigan is entitled to any relief or that its claims have any legal or factual merit.**

### COUNT II: PART 301 (INLAND LAKES AND STREAMS)

55.    All previous allegations are incorporated here.

**ANSWER:    Defendants incorporate paragraphs 1 through 54 of this Answer by reference.**

56.    Wixom Lake is an "inland lake or stream" under MCL 324.30101(i).

**ANSWER:    This allegation constitutes a legal conclusion to which no response is required.**

57.    The Drawdowns "diminish[ed] an inland lake or stream" under MCL 324.30102(1)(d). They significantly diminished the lake level, exposed large areas of the bottomland for a prolonged period and caused the death of thousands—if not millions—of freshwater mussels, including federally endangered mussels.

**ANSWER:    To the extent these allegations constitute legal conclusions, no response is required.  Defendants otherwise lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

58.    The Drawdowns were not authorized by a permit, so they were forbidden by MCL 324.30102(1)(d).

**ANSWER:    Denied.  This allegation otherwise constitutes a legal conclusion to which no response is required.**

59.    Defendants violated Part 301 by authorizing, directing, or carrying out the Drawdowns.

**ANSWER:    Denied.**

60.    Because the Drawdowns caused the death of so many freshwater mussels and caused other natural resource damage, simply lowering the gates of the Edenville Dam and allowing Wixom Lake to refill, which happened in the spring of 2019 and presumably Defendants will seek to have happen again in the spring of 2020, does not restore "the affected area to its prior condition." MCL 324.30112(1).

**ANSWER:    To the extent these allegations constitute legal conclusions, no response is required.  Defendants otherwise lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

61.    The State seeks an order under MCL 324.30112 requiring Defendants to restore the Wixom Lake ecosystem to its prior condition, including restoration of the freshwater mussels, along with the assessment of civil fines.

**ANSWER:    This allegation constitutes a legal conclusion to which no response is required.**

## COUNT III: PART 303 (WETLANDS PROTECTION)

62.    All previous allegations are incorporated here.

**ANSWER:    Defendants incorporate paragraphs 1 through 61 of this Answer by reference.**

63.    Areas on and contiguous to Wixom Lake, including the northern portions of both the Tobacco side and Tittabawassee side impoundments, the marsh east of Heron Cove, and others, are "wetlands" as defined by MCL 324.30301(n) according to the State's records.

**ANSWER:    This allegation constitutes a legal conclusion to which no response is required. Defendants otherwise lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

64.    The Drawdowns drained surface water from the wetlands without a permit, in violation of MCL 324.30304(d).

**ANSWER:    This allegation constitutes a legal conclusion to which no response is required. Defendants otherwise lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

65.    The drainage went beyond minor drainage and does not qualify for any exemption listed in Part 303, including those in MCL 324.30305.

**ANSWER:    This allegation constitutes a legal conclusion to which no response is required. Defendants otherwise lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

66.    By drawing significantly more water from the wetlands than an ordinary winter Drawdown would, the Drawdowns drained the wetlands in violation of Part 303.

**ANSWER:    This allegation constitutes a legal conclusion to which no response is required. Defendants otherwise lack sufficient knowledge to determine the truth of these allegations and, therefore they are denied.**

67.    Defendants violated Part 303 by authorizing, directing, or carrying out the Drawdowns.

**ANSWER:    Denied.**

68.    The State seeks an order under MCL 324.30316 requiring Defendants to restore the affected wetlands as nearly as possible to their state prior to the Drawdowns, along with the assessment of civil fines.

**ANSWER:    This allegation constitutes a legal conclusion to which no response is required.**

### COUNT IV: CONVERSION

69.    All previous allegations are incorporated here.

**ANSWER:    Defendants incorporate paragraphs 1 through 68 of this Answer by reference.**

18

70.     The State owns the freshwater mussels killed by the Drawdowns. MCL 324.48702(1).

**ANSWER:    This allegation constitutes a legal conclusion to which no response is required.**

71.     Defendants had a duty not to interfere with the State's property, let alone destroy it.

**ANSWER:    This allegation constitutes a legal conclusion to which no response is required.**

72.     Defendants knew that by authorizing or carrying out the Drawdowns, they would expose large portions of the bottomland of Wixom Lake for prolonged periods.

**ANSWER:    Denied.**

73.     By authorizing, directing, or carrying out the Drawdown, Defendants wrongfully exerted dominion over the freshwater mussels and caused their death, which denies and is inconsistent with the State's rights to them.

**ANSWER:    Denied. This allegation otherwise constitutes a legal conclusion to which no response is required.**

74.     Defendants' actions constitute a taking, and it was contrary to law for Defendants to take the State's mussels without authorization. MCL 324.48702(1); MCL 324.45703.

**ANSWER:    This allegation constitutes a legal conclusion to which no response is required.**

75.     The State seeks damages for Defendants' conversion of the State's mussels.

**ANSWER:    This allegation constitutes a legal conclusion to which no response is required.**

## COUNT V: PUBLIC NUISANCE

76.    All previous allegations are incorporated here.

**ANSWER:    Defendants incorporate paragraphs 1 through 75 of this Answer by reference.**

77.    Defendants' actions have created a public nuisance because the general public has a common right to enjoy and benefit from the natural resources that are part of the Wixom Lake ecosystem.

**ANSWER:    This allegation constitutes a legal conclusion to which no response is required.**

78.    Defendants' actions have unreasonably interfered with that common right because the Drawdowns have harmed those natural resources and caused long-lasting negative impacts on the Wixom Lake ecosystem.

**ANSWER:    Denied.**

79.    Defendants' actions have also unreasonably interfered with that common right because they are proscribed by law. As alleged above, Defendants actions have violated Parts 17, 301, 303, 365, 457 and 487 of the NREPA. Each of those parts are laws passed to preserve the public welfare.

**ANSWER:    Denied.  This allegation otherwise constitutes a legal conclusion to which no response is required.**

80.    Not only have Defendants created the public nuisance by their actions, but the nuisance emanates from land they own or control.

**ANSWER:    Denied.  This allegation otherwise constitutes a legal conclusion to which no response is required.**

20

81. The State seeks an order abating the public nuisance, restoring as much as possible the Wixom Lake ecosystem to its state prior to the Drawdowns, and forbidding Defendants from further harming the Wixom Lake ecosystem without permits.

**ANSWER:   This allegation constitutes a legal conclusion to which no response is required.**

WHEREFORE, Defendants respectfully request that this Court enter a Judgment of no cause of action in their favor and against Plaintiffs and further requests entry of an award or all of Defendants' costs, fees, and attorneys' fees as well as any other relief incurred in defending this action.

Respectfully submitted,

VARNUM LLP

Dated:  June 16, 2020                        By: _____
                                                          Aaron M. Phelps (P64790)
                                             Business Address & Telephone:
                                                          Bridgewater Place, P.O. Box 352
                                                          Grand Rapids, MI 49501-0352
                                                          Telephone: (616) 336-6000
                                                          amphelps@varnumlaw.com

                                             THE KOGAN LAW GROUP, P.C.
                                                          Lawrence A. Kogan (NY # 2172955)
                                             Business Address & Telephone:
                                                          100 United Nations Plaza, Suite #14F
                                                          New York, NY 10017
                                                          (212) 644-9240
                                                          lkogan@koganlawgroup.com

                                             *Attorneys for Defendants*
                                             *Lee Mueller, Boyce Michigan, LLC, Edenville*
                                             *Hydro Property LLC, Boyce Hydro Power LLC,*
                                             *Boyce Hydro LLC, WD Boyce Trust 2350, WD*
                                             *Boyce Trust 3649,WD Boyce Trust 3650, Stephen B.*
                                             *Hultberg, and Michele G. Mueller*

16521472_1.docx

## AFFIRMATIVE AND OTHER DEFENSES

Defendants, Defendants Lee Mueller; Boyce Michigan, LLC; Edenville Hydro Property, LLC; Boyce Hydro Power LLC; Boyce Hydro, LLC; WD Boyce Trust 2350; WD Boyce Trust 3649; WD Boyce Trust 3650; Stephen B. Hultberg; and Michele G. Mueller ("Defendants"), by and through their undersigned counsel state the following as their Affirmative and Other Defenses to Plaintiffs' Complaint:

1.      Plaintiffs have failed to state a claim upon which relief may be granted.

2.      Plaintiffs' claims are barred by the doctrine of economic loss.

3       Plaintiffs' claims are barred by the doctrine of estoppel and waiver.

4.      Plaintiffs' claims are barred because recovery by Plaintiffs would violate public policy.

5.      Plaintiffs' claims are barred by the applicable statute of limitations and/or repose.

6.      Plaintiffs' claims are barred by the doctrine of laches.

7.      Plaintiffs' claims are barred by the doctrine of unclean hands.

8.      Plaintiffs' claims are barred because Plaintiffs lack standing.

9.      Plaintiffs' claims are barred by statutory defenses prerequisites.

10.     Plaintiffs' claims are barred based on federal preemption.

11.     Plaintiffs' claims are barred based on claimants' own conduct.

12.     Plaintiffs' claims are barred based on unclean hands.

13.     Plaintiffs' claims are barred based on failure to mitigate damages.

14.     Plaintiff's claims are barred based on conditions precedent.

15.     Plaintiffs' claims are barred based on contributory negligence.

16.    Plaintiffs' claims are barred to the extent damages were the result of unrelated, pre-existing, or subsequent conditions unrelated to Defendants' conduct.

17.    Plaintiffs' claims are barred because of the lack of a causal relationship.

18.    Plaintiffs' claims are barred based on statutory compliance.

19.    Plaintiffs' claims are barred because the wrong parties were named as Defendants.

20.    Plaintiffs' claims are barred based on Plaintiffs' agents and employees denying Defendant Mueller's constitutional right to pursue economic interests in, and to conduct trade or making a living upon crossing into, the State of Michigan, in violation of the Privileges and Immunities Clause of the United States Constitution.

21.    Plaintiffs' claims are barred based on Plaintiffs' agents and employees denying Defendants' constitutional substantive due process right to execute contracts and to use their private real property fee simple interests in Edenville Dam and adjacent terrestrial lands, fee simple and licensed interests in the bottom lands of Wixom Reservoir, the Tittabawassee River and the Tobacco River, and other private real property fee simple interests in the terrestrial lands adjacent to the upstream FERC-licensed Smallwood Dam, in violation of the Fourteenth Amendment of the United States Constitution.

22.    Plaintiffs' claims are barred based on Plaintiffs' failure to determine any rational or proportionate relationship between the hundreds of millions of dollars they will seek in alleged natural resources damages and the several hundred thousand dollars of statutory fines they will seek for alleged noncompliance, which constitutes a constitutionally impermissible excessive fine under the Eight Amendment of the United States Constitution's Excessive Fines Clause incorporated in the Fourteenth Amendment of the United States Constitution's Substantive Due Process Clause.

23.     Plaintiffs' claims are barred based on Plaintiffs' and their agents' and employees' denial of the Defendants' previously filed joint statutory permit application for a winter drawdown of Wixom Reservoir without an opportunity for a statutorily prescribed hearing, which deprived Defendants of their constitutional right to procedural due process of law under the Fourteenth Amendment of the United States Constitution.

24.     Plaintiffs' claims are barred based on Plaintiffs' and their agents' and employees' different and discriminatory treatment of Defendants, unlike any other Michigan-based hydroelectric dam owner-operator that provides the same public benefits elsewhere in the State with respect to their management and operation of their dams and impoundments, which different and discriminatory treatment lacks any rational basis and has been motivated by a malignant animosity that violates Defendants' constitutionally protected right to equal protection under the law, guaranteed by the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

25.     Defendants reserve the right to add to or amend this list of affirmative and other defenses up to and including the time of trial.

                              Respectfully submitted,

                              VARNUM LLP

Dated:  June 16, 2020         By: _____
                                   Aaron M. Phelps (P64790)
                              Business Address & Telephone:
                                   Bridgewater Place, P.O. Box 352
                                   Grand Rapids, MI 49501-0352
                                   Telephone: (616) 336-6000
                                   amphelps@varnumlaw.com

                                   THE KOGAN LAW GROUP, P.C.
                                   Lawrence A. Kogan (NY # 2172955)
                              Business Address & Telephone:

100 United Nations Plaza, Suite #14F
New York, NY 10017
(212) 644-9240
lkogan@koganlawgroup.com

*Attorneys for Defendants*
*Lee Mueller, Boyce Michigan, LLC, Edenville*
*Hydro Property LLC, Boyce Hydro Power LLC,*
*Boyce Hydro LLC, WD Boyce Trust 2350, WD*
*Boyce Trust 3649,WD Boyce Trust 3650, Stephen B.*
*Hultberg, and Michele G. Mueller*

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all registered ECF participants listed for this case.

Respectfully submitted,

VARNUM LLP

Dated:  June 16, 2020    By: _____
                              Aaron M. Phelps (P64790)
                         Business Address & Telephone:
                              Bridgewater Place, P.O. Box 352
                              Grand Rapids, MI 49501-0352
                              Telephone: (616) 336-6000
                              amphelps@varnumlaw.com